# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE NO. 1:13-CR-534 |
| Plaintiff, | : | |
| | : | JUDGE DAN A. POLSTER |
| vs. | : | |
| | : | |
| DEONTE TATE, | : | **DEFENDANT'S MOTION TO** |
| | : | **SUPPRESS EVIDENCE** |
| Defendant. | : | (Evidentiary Hearing Requested) |
| | : | |

Defendant Deonte Tate, through undersigned counsel, hereby moves this Honorable Court to order suppression of all evidence confiscated by the Cuyahoga Metropolitan Housing Authority, who stopped, seized, and searched Mr. Tate and the vehicle in which he was a passenger without reasonable suspicion, without probable cause, and without a search warrant or voluntary consent. Mr. Tate also moves this Court to suppress all subsequent verbal statements made by Mr. Tate on November 3, 2013. Mr. Tate requests an evidentiary hearing, as the arguments supporting this Motion require close examination of the facts and circumstances surrounding this warrantless stop, seizure, and search.

Respectfully submitted,

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
*/s/ Wendi L. Overmyer*
WENDI L. OVERMYER (#0071000)
Attorney at Law
Office of the Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
Tel: (216) 522-4856; Fax: (216) 522-4321
edward_bryan@fd.org; wendi_overmyer@fd.org

**MEMORANDUM**

I.      **Introduction**

Defendant Deonte Tate asserts that members of the by the Cuyahoga Metropolitan Housing Authority Police Department (CMHA) violated his Fourth Amendment rights by failing to have a reasonable, articulable suspicion or probable cause to believe he had engaged in criminal activity or committed a traffic violation when they stopped, seized, and searched the vehicle in which he was a passenger on November 3, 2013. Because the stop was illegal, all evidence obtained as a result of this stop, including statements provided by Mr. Tate, must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1962).

II.     **Relevant Facts**[1]

On November 3, 2013, at approximately 1:18 a.m., Mr. Tate was a passenger in a Ford Fusion that belong to his girlfriend Shavette N. Oliver. The vehicle was parked on a one-way residential street on the North side of 4035 Case Court, near the Outhwaite Estates housing complex. The vehicle's motor was running and the vehicle was parked on the side of the street, with cars parked directly to the front and rear of the vehicle. Ms. Oliver had left the vehicle running while she went into her apartment to use the restroom. She returned to the vehicle and prepared to drive herself and Mr. Tate to a friend's house.

---

[1] For purposes of argument only, Mr. Tate presents the facts as set forth in: (1) ATF Report of Investigation, Opening Report, dated December 5, 2013, prepared by ATF Special Agent Gregory D. Bartoe; (2) ATF Report of Investigation, Interview of Det. Clinton Ovalle, dated December 5, 2013, prepared by ATF Special Agent Gregory D. Bartoe; and (3) CMHA-Police Division Case Report Detail dated November 8, 2013, prepared by Det. Clinton Ovalle. Mr. Tate specifically reserves the right to challenge the information contained therein.

As Ms. Oliver put the car in gear to pull out of the parking spot, an unmarked car, containing CMHA Sergeant Paul Hermensky and Detective Clinton Ovalle, pulled up to the left front side of the vehicle, effectively blocking in Ms. Oliver's vehicle. The officers exited their car and approached Ms. Oliver's vehicle. The officers do not mention in the reports how they parked their car.

The officers allege they were patrolling the area surrounding the Outhwaite Estates "due to numerous complaints of drug and gang activity" and other "criminal activity including robberies, burglaries, and other crimes" that occurred in and or around the Outhwaite Estates. "Due to the time of night, the cold temperature outside, and the vehicle idling while occupied" the officers decided to stop Ms. Oliver's vehicle. The officers allege they approached the vehicle "to check on the welfare of the occupants" and "make sure they were all right and/or not involved with any criminal activity." Det. Ovalle spoke to front seat passenger Mr. Tate, while Sgt. Hermensky spoke to the driver, Ms. Oliver. As he began to speak with Mr. Tate, Det. Ovalle claims to have detected a "strong odor of alcohol" on Mr. Tate's breath.

Mr. Tate alleges that soon after he began speaking with Det. Ovalle, he was forcibly removed from the vehicle, slammed into the vehicle, and handcuffed. Ms. Oliver was also forcibly removed from the vehicle, slammed to the ground, and handcuffed. Det. Ovalle then reached into the car, searching under the passenger seat and in the center console, locating a firearm.

Det. Ovalle alleges that while he was speaking to Mr. Tate, he observed "the handle of a semi-automatic pistol protruding from Tate's waistband on his right side," which Mr. Tate allegedly attempted to conceal with his right arm. Det. Ovalle claims he then secured the firearm from Mr. Tate's waistband while alerting Sgt. Hermensky about the firearm. Mr. Tate denies carrying a

firearm in his waistband that evening. Det. Ovalle reports that other CMHA PD officers arrived on scene to assist and remove Mr. Tate and Ms. Oliver from the vehicle.

The firearm was examined and found to be a .9 mm pistol with three rounds of ammunition in the firearm's magazine. After Mr. Tate was out of the vehicle, he informed the officers that drugs were located in the center console, and the drugs were then recovered by CMHA PD officers. An open container of Hennessy liquor was found on the front passenger floor area.

No recording of the interrogation has been provided to counsel. No written *Miranda* waiver has been provided to counsel. Det. Ovalle claims he advised Mr. Tate of his *Miranda* rights and Mr. Tate stated he understood these rights. When asked why he carried the firearm, Mr. Tate allegedly replied it was "for protection." When Det. Ovalle continued questioning, Mr. Tate invoked his *Miranda* rights and the interrogation ceased. Det. Ovalle alleges that thereafter, Mr. Tate "made an unsolicited statement to Oliver that was overheard by the officers that the 'Feds are gonna take this case. I ain't supposed to have it.'" Ms. Oliver was released.

Officers transported Mr. Tate to the Cleveland Police Department's Central Processing Unit. Mr. Tate was subsequently charged in the instant case with one count of unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g).

**III.    The officers lacked authority to conduct the initial stop**.

The Fourth Amendment to the United States Constitution states:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend IV. As a general rule, an arrest or search must be based on probable cause and executed pursuant to a search warrant. *See Katz v. United States*, 389 U.S. 347, 357 (1967). A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

An investigatory stop and frisk, known as a *Terry* stop, is constitutionally permissible only if two requirements are met: (1) there must be a proper basis for the stop, which is satisfied "when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense," and (2) to proceed from a stop to a frisk, the police officer must have reasonable suspicion that the person stopped is armed and dangerous. *United States v. McMullin*, – F.3d –, 2014 WL 211215, **2-3 (6th Cir. January 21, 2014) (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), and *Arizona v. Johnson*, 555 U.S.323 (2009)). The reasonableness of the stop is ascertained by first determining "whether the officer's action was justified at its inception." *Terry*, 392 U.S. at 19-20. An officer's decision is reasonable when the police officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

If the government fails to prove probable cause or reasonable suspicion, the exclusionary rule allows courts to exclude the evidence seized in violation of the Fourth Amendment and exclude all evidence subsequently obtained as a result of that particular violation. *Wong Sun v. United States*, 371 U.S. 471 (1962); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999).

"While purely consensual encounters are not subject to Fourth Amendment scrutiny, all seizures—including brief investigatory stops—receive this protection." *United States v. Beauchamp*,

659 F.3d 560, 5668 (6th Cir. 2011) (citations omitted). Circumstances indicative of a non-consensual stop include, but are not limited to: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)(citations omitted). The encounter between the officers and Mr. Tate was not consensual. Rather, the stop constituted a "seizure," because "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall*, 446 U.S. at 554.

The officers here unconstitutionally seized Mr. Tate by prohibiting the vehicle from exiting the parking spot. *See United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009) (law enforcement officer's blocking of defendant's automobile in parking lot with officer's car amounted to an unlawful *Terry* stop requiring suppression); *United States v. Gross*, 662 F.3d 393 (6th Cir. 2011) (finding officer's conduct in blocking automobile in parking in which defendant was sitting was unreasonable and warrantless *Terry* seizure, requiring suppression). By blocking in the vehicle, officers seized Mr. Tate "by means of physical force or show of authority" that "in some way restrained [his] liberty." *See Beauchamp*, 659 F.3d at 566 (*citing Terry*, 392 U.S. at 19 n. 16 and *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)).

In *See*, *supra*, law enforcement officer did not have reasonable suspicion to support a *Terry* stop that occurred when officer blocked suspect's car by parking patrol car in front of it. Although it was 4:30 in the morning, suspect was parked in a high-crime area, in a dimly lit area of the lot, and the officer had been instructed to pay special attention to non-resident loiterers because of a recent increase in robberies, the officer did not suspect any specific criminal activity sufficient to support

the stop. *See*, 574 F.3d at 313-14. The *See* court found such a stop to be unconstitutional warranting suppression. *Id.* Similarly, in *Gross*, officers did not have a particularized and objective basis for suspecting that the passenger in a vehicle parked outside a housing complex with the engine running was engaged in criminal activity at time of investigative stop, and thus, the stop constituted an unlawful *Terry* seizure warranting suppression. *Gross*, 662 F.3d 400-401.

The officers here do not allege a traffic violation or criminal activity to be the reason for the stop and investigation of Ms. Oliver's vehicle. Rather, officers decided to approach the vehicle because two persons were sitting in an idling car at night, parked in a high-crime area. The alleged previous "drug and gang activity" in the area and the alleged recent "robberies and burglaries" nearby are not otherwise specified. No details are provided as to the length of time since such alleged activity occurred. The two occupants, Ms. Oliver and Mr. Tate, rolled down their windows to answer the officer's questions, and did not attempt to flee.

The unremarkable presence of a car idling in a parking spot fails to "articulate specific, particularized facts that amount to more than a 'hunch' that criminal activity may be afoot." *United States v. Young*, 707 F.3d 598, 604–05 (6th Cir. 2012); *Gross*, *supra*. Rather, the behavior described is that of any given parked car with occupants, which without more does not rise to probable cause or reasonable suspicion of criminal activity.

There is no indication the car was parked for an excessive amount of time or was parked illegally. The reports do not indicate the occupants themselves were doing anything in particular when first observed by the officers – in fact, no behavior of the driver or passengers is mentioned.

Mere physical presence in a high crime area at night is insufficient to support a reasonable suspicion of criminal activity to justify a *Terry* stop. *See United States v. Johnson*, 620 F.3d 685,

692-93 (6th Cir. 2010) (Officers did not have reasonable suspicion to stop defendant walking in high drug-trafficking area at night, 20-30 yards from a car referenced in 911 call); *United States v. Caruthers*, 458 F.3d 459, 467 (6th Cir.2006) (presence in a high-crime location and the lateness of the hour "may not, without more, give rise to reasonable suspicion.") (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Mr. Tate was not even trespassing or loitering, which are also insufficient on their own to conduct a *Terry* stop. *See United States v. Williams*, 615 F.3d 657, 666-67 (6th Cir. 2010) (Officers lacked reasonable suspicion to detain defendant for trespassing, even though there had been complaints of drinking and loitering in the area, where defendant was standing immediately next to affordable-housing complex with a group where others were drinking from open containers).

The officers here had no reasonable suspicion Mr. Tate had committed or was committing a criminal offense. The stop was not justified at its inception. The facts of this case do not provide "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Thus, the officers' stop violated Mr. Tate's Fourth Amendment protections, and all evidence obtained as a result of the illegal stop – including any incriminating statements made by Mr. Tate – must be suppressed. *Wong Sun*, 371 U.S. at 485. Because the initial stop was not lawful this Court need not consider the legality of the scope and duration of the stop.

**IV.   Even if the initial stop was valid, the officers lacked authority to conduct a frisk because officers had no reasonable suspicion Mr. Tate was armed and dangerous.**

The "seizure" of Mr. Tate occurred when police officers blocked in the car in which he was a passenger. *See Terry*, 392 U.S. at 16 (defining seizure and search). A valid stop does not necessarily grant an officer the authority to perform a frisk, i.e., a patdown search. To proceed from a stop to a frisk, the police officer must have reasonable suspicion the person stopped is armed and

dangerous. *Johnson*,555 U.S. at 326–27 ("To justify a patdown of . . . a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.").

Mr. Tate alleges that soon after he began speaking with Det. Ovalle, he was forcibly removed from the vehicle, slammed into the vehicle, and handcuffed. Ms. Oliver was also forcibly removed from the vehicle, slammed to the ground, and handcuffed. Det. Ovalle then reached into the car, searching under the passenger seat and in the center console, locating a firearm. The facts do not support a reasonable belief that Mr. Tate was armed and dangerous. Mr. Tate complied with officer's commands to roll down his window and was readily answering the officer's questions. Mr. Tate asserts the officers did not see a weapon or gun-shaped object in his waistband.

In contrast, the officer's reports state that during the conversation with Mr. Tate, Det. Ovalle observed "the handle of a semi-automatic pistol protruding from Tate's waistband on his right side," which Mr. Tate allegedly attempted to conceal with his right arm. Det. Ovalle claims he then secured the firearm from Mr. Tate's waistband while alerting Sgt. Hermensky about the firearm. Mr. Tate denies carrying a firearm in his waistband that evening.

Mr. Tate was not engaged in an activity associated with firearms, such as drug activity. *Cf. Stennis, supra* (officer had reasonable suspicion defendant was armed and dangerous based, in part, on prior knowledge this defendant trafficked in drugs and carried weapons on his person); *United States v. Noble*, 364 Fed.Appx. 961, 965 (6th Cir. 2010) (officers had a reasonable belief defendant may be armed because of their suspicion that he was involved in illegal drug activity, which was supported by the odor of marijuana emanating from vehicle and lack of response when asked if defendant had a weapon). While officers later found a firearm and drugs in the vehicle, the

reasonable suspicion for a stop and frisk, however, must come *before* the officers stopped and patted down Mr. Tate. Officers did not ask Mr. Tate if he possessed a firearm or if a firearm was located in the vehicle.

The facts do not support a reasonable belief that Mr. Tate was armed and dangerous. Therefore, the removal of Mr. Tate from the vehicle to handcuff and frisk him was unconstitutional, warranting suppression.

**V.     Conclusion**

For these reasons, CMHA officers violated Mr. Tate's Fourth Amendment rights by unlawfully seizing the vehicle in which he was a passenger, and unlawfully frisking his person. All evidence the officers seized, as well as any statements made by Mr. Tate relating to the stop, must therefore be suppressed under *Wong Sun v. United States*, 371 U.S. 471 (1963). To this end, Mr. Tate requests an evidentiary hearing so the Court may consider all of the circumstances surrounding the officers' stop and search.

Respectfully submitted,

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
*/s/ Wendi L. Overmyer*
WENDI L. OVERMYER (#0071000)
Attorney at Law
Office of the Federal Public Defender
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
Tel: (216) 522-4856; Fax: (216) 522-4321
edward_bryan@fd.org; wendi_overmyer@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2014, a copy of the foregoing **Motion to Suppress** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Edward G. Bryan*
EDWARD G. BRYAN (#0055556)
Assistant Federal Public Defender
