IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:13CR534 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | |
| DEONTE TATE, | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO SUPPRESS |
| Defendant. | ) | |

Now comes the United States of America, by and through counsel, Steven M. Dettelbach, United States Attorney, Miranda E. Dugi, Assistant United States Attorney, and Kelly L. Galvin, Assistant United States Attorney, and hereby submits the following response in opposition to defendant's motion to suppress.

**I.  INTRODUCTION**

On December 3, 2013, a grand jury indicted defendant Deonte Tate, a convicted felon, for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Tate now moves this Court to suppress all evidence seized and statements he made, claiming that they were obtained in violation of the Fourth Amendment. (R.13, Def. Motion, PageID 39).

The Court should deny Tate's motion. The totality of the circumstances demonstrates that officers initiated a consensual encounter with Tate, during which one officer saw a firearm

tucked into Tate's waistband despite Tate's attempt to conceal it. Officers conducted the subsequent seizure of Tate and his firearm, as well as the search of the car and Tate in accordance with the requirements of the Fourth Amendment. This evidence, as well as Tate's voluntary admissions regarding the gun and drugs, are not subject to suppression.

## II. STATEMENT OF FACTS

### A. *A Note on the Sources of the Facts Alleged*

The following factual allegations are based upon law enforcement reports provided to Tate in discovery. (Exhibits A, B). Tate claims to cite these reports—"for purposes of argument only"— for the facts alleged in his motion. (R.13, Def. Motion, PageID 40, n.1). In some parts of his motion, Tate attributes allegations to either the officers or himself. *See, e.g.*, *id.*, 41. However, elsewhere he commingles information from these reports with facts he alleges for the first time, without attribution or support. *See, e.g., Id.*, 40. The government does not concede the truth of these newly alleged facts. Any genuine factual dispute as to the circumstances surrounding the encounter is for the Court to resolve.

### B. *Factual Background*

On November 3, 2013, Cuyahoga Metropolitan Housing Authority (CMHA) officers were on patrol in the area of the Outhwaite Estates, near 4035 Case Court in Cleveland, Ohio. Officers were dispatched to the area in response to complaints of criminal activity—including drug and gang activity, as well as robberies and burglaries—on what CMHA termed a "Quality of Life Detail." (Exhibits A, B).

At approximately 1:18 a.m., Sergeant Paul Hermensky and Detective Clinton Ovalle saw a 2006 black Ford Fusion parked near 4035 Case Court with its engine running. *Id.* The officers approached the car to determine the condition of its occupants. They walked to the front

passenger's side of the car, where defendant Tate was seated with his window open. *Id.* As Detective Ovalle inquired as to the occupants' welfare, he noticed that Tate smelled strongly of alcohol. Detective Ovalle looked down at Tate and saw what appeared to be the handle of a firearm sticking out of Tate's waistband on the right side. *Id.* Tate then moved his right arm to cover the firearm, and Detective Ovalle yelled to Sergeant Hermensky as he grabbed the firearm from Tate's waistband. *Id.* The firearm, which was loaded with ammunition, was later identified as a Ruger 9mm pistol, model P95, serial number 315-52416. *Id.*

Additional officers arrived to assist Hermensky and Ovalle, and they removed both Tate and the driver from the car, placing them in handcuffs. (Exhibit A). The driver and owner of the vehicle was Shavette Nicole Oliver, who was a tenant of a nearby CMHA building at 4037 Case Court. *Id.* When officers removed Tate and Oliver from the vehicle, Tate began shouting that Oliver was his girlfriend and did not want her to get in trouble for the drugs in the car. *Id.* This statement prompted officers to ask Tate where the drugs were located, and Tate responded that they were in the car's center console. *Id.* There, an officer recovered bags containing heroin and crack cocaine. *Id.* Another officer saw an open bottle of liquor on the front passenger seat floor. *Id.*

Detective Ovalle then advised Tate that he was under arrest and of his *Miranda* rights, which Tate acknowledged understanding. *Id.* When Detective Ovalle asked Tate why he had a gun, Tate said it was for protection, but invoked his right to remain silent when asked for details about the gun. (Exhibits A, B). Later, Tate said to Oliver, "The Feds are gonna take this case. I ain't supposed to have it." *Id.* Officers overheard this statement, which they interpreted as a reference to the firearm. *Id.* Officers also recovered a CMHA residence key from Tate's pocket

during a search incident to his arrest, which Oliver said she had given to Tate because he was her boyfriend. (Exhibit A).

### III. ANALYSIS

*A. Applicable Legal Principles*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV.

In articulating the bounds of that right, the Sixth Circuit has explained that there are three categories of permissible encounters between the police and citizens that do not require a warrant: "(1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon reasonable suspicion; and (3) arrests which must be based upon probable cause." *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (internal quotation marks omitted).

A law enforcement officer may ask someone questions in a public place without seizing that person for purposes of the Fourth Amendment. *United States v. Drayton*, 536 U.S. 194, 200 (2002). By contrast, an encounter constitutes a seizure—requiring a demonstration of either reasonable suspicion or probable cause—"only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). To conduct a brief investigatory stop, as permitted under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny, an officer must have reasonable suspicion. Reasonable suspicion has been described as "a particularized and objective basis for suspecting legal wrongdoing . . . [although] the likelihood of criminal activity

4

need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu,* 534 U.S. 266, 273-74 (2002) (internal quotation marks and citations omitted). Probable cause is "'a reasonable ground for belief of guilt . . . [that is] particularized with respect to the person to be searched or seized.'" *United States v. Pruitt*, 458 F.3d 477, 490 (6th Cir. 2006) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks and citations omitted)).

In seeking suppression of evidence based on an improper search or seizure, the defendant bears the burden of making a prima facie showing that police acquired the evidence unlawfully. *United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991) ("In the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search."); *United States v. Wright*, 468 F.2d 1184 (6th Cir. 1972) ("Due to the presumption of propriety of police conduct, the burden of establishing the illegality of the entry [onto premises without a warrant] is on the defendant. "). If the defendant satisfies this burden, the government must then show that the pertinent standard of suspicion to justify search or seizure without a warrant is satisfied. *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976) ("[O]n a motion to suppress evidence the burden of establishing a prima facie case is upon the movant, but that when such a case has been made, the burden of proof shifts to the government.") (citing *United States v. Thompson*, 409 F.2d 113 (6th Cir. 1969)). The applicable standard of proof is a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

  B. *The officers' encounter with Tate does not constitute a seizure under the Fourth Amendment.*

The officers' initial encounter with Tate required neither reasonable suspicion nor probable cause because it was a consensual encounter, and not a seizure under the Fourth Amendment. Sergeant Hermensky and Detective Ovalle approached the car to inquire generally as to the occupants' condition and purpose in the area. Without more, such questions do not constitute a "stop" or seizure for Fourth Amendment purposes. *Mendenhall*, 446 U.S. at 554; *Florida v. Royer*, 460 U.S. 491, 497 (1983) (officer does not render an encounter nonconsensual—and therefore a seizure—"by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen").

"Absent coercive or intimidating behavior which negates the reasonable belief that compliance is not compelled, the [officer's] request for additional identification and voluntarily given information from the defendant does not constitute a seizure under the Fourth Amendment." *United States v. Peters*, 194 F.3d 692, 698 (6th Cir. 1999); *see also Drayton*, 536 U.S. at 203-04 ("ample grounds to conclude" that officers did not seize bus passengers where there was "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice"); *Florida v. Bostick*, 501 U.S. 429, 434-35 (1991) ("[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search . . . as long as the police do not convey a message that compliance with their request is required." (internal citations omitted)); *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011) ("Factors that, if present, indicate that a seizure occurred include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the

citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'") (quoting *Mendenhall*, 446 U.S. at 554); *United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) (request for identification did not constitute seizure until officer stated that defendant "could be on his way just as soon as [the officer] ID'd him.").

The only support Tate offers for his claim that this was a nonconsensual encounter—and thus a seizure—is that "[a]s Ms. Oliver put the car in gear to pull out of the parking spot, an unmarked car . . . pulled up to the left front side of the vehicle, effectively blocking in Ms. Oliver's vehicle." (R.13, Def. Motion, PageID 41, 44). Blocking a vehicle with a police cruiser could potentially convert what would otherwise be a consensual encounter into a *Terry* stop. *See, e.g.*, *United States v. Carr*, 674 F.3d 570 (6th Cir. 2012) (consensual encounter not *Terry* stop where police car did not block defendant's exit and police briefly flashed blue lights to identify themselves); *Gross*, 662 F.3d at 399 (citing fact that police cruiser blocked exit of parked vehicle as requiring reasonable suspicion); *United States v. See*, 574 F3d 309, 314 (6th Cir. 2009) (same).

However, the relative location of the cars is not dispositive of whether a reasonable person would have felt free to leave. It is the *totality* of the circumstances that is determinative —including whether a police vehicle was unmarked or marked, how it approached, and where it was positioned—and not a single circumstance in isolation. *Arvizu*, 534 U.S. at 277 (rejecting "divide and conquer" method of reasonable suspicion analysis); *United States v. Martin*, 289 F.3d 392 (6th Cir. 2002) (factors justifying *Terry* stop may not be considered in isolation).

The Sixth Circuit recently underscored this point in *United States v. Williams*, 525 F. App'x 330, 333 (6th Cir. 2013) (unpublished opinion). There, the court noted that the officer "pulled his squad car far enough past the defendant's parked vehicle to allow it to maneuver out

7

of the space, unlike the officers in *See* and *Gross*." *Id.* However, "[u]nlike the defendant in *Carr*, [the occupants of the vehicle] did not have the option of simply backing away or taking some other less confrontational route." *Id.* The *Williams* court held that the position of the cars was not dispositive, and "decline[d] to announce a rule today that would seem to reduce our Fourth Amendment analysis to counting inches on a yardstick." *Id.* Instead, the court emphasized additional factors that converted the episode into a *Terry* stop, including that the officer shone the lights of his (presumably marked) squad car on the defendant throughout the encounter, blocked the vehicle by walking in front of it, and "used his flashlight to probe the vehicle's interior" as he began his inquiry. *Id.*

The totality of the circumstances here demonstrate that this case stands in contrast to these recent Sixth Circuit cases involving police encounters with occupants of parked vehicles. There is no indication from law enforcement reports—or anywhere other than Tate's motion—that the officers parked a car so as to block the car's exit, or that Oliver was about to drive away. Likewise, Tate points to no indicium of coercion in the officers' approach or inquiry. The reports indicate that Oliver's car was parked and that Tate's window was open when the officers approached. Detective Ovalle asked questions to ascertain Tate's purpose and condition, which circumstances indicated might be affected by alcohol. Moreover, unlike the defendants in *Gross*, *See*, and *Williams*, Tate and Oliver had an apparent alternative means of ending the encounter with the officers than driving away: to go on foot to Oliver's nearby CMHA apartment—to which they both had a key in their possession at the time of the stop. Such circumstances do not convert a consensual encounter into investigatory detention.

   C. *Upon seeing the firearm in plain view and Tate's attempt to conceal it, officers lawfully seized the firearm and Tate.*

The officers were justified—on either reasonable suspicion or probable cause—in seizing Tate and his firearm. In the course of a consensual encounter, Detective Ovalle noticed the handle of the firearm sticking out of Tate's waistband, on Tate's right side. That Tate was in a high-crime area, late at night, apparently under the influence of alcohol, in possession of a partially concealed firearm, and took an additional step to conceal it from law enforcement view all support a reasonable suspicion that the officers' safety was in jeopardy. Under such circumstances, Detective Ovalle was entitled to seize the weapon for the officers' safety. *Terry*, 392 U.S. at 27 (officer may seize weapon if "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."); *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003) (officer permitted to seize firearm through open window of car based on reasonable suspicion "that the weapon posed an immediate danger to officer or public safety"); *see also llinois v. Wardlow*, 528 U.S. 119, 124 (2000) (although presence in high-crime area alone cannot establish reasonable suspicion, it is relevant to *Terry* analysis); *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975) ("Furtive movements made in response to a police presence may also properly contribute to an officer's suspicions."); *See*, 574 F3d at 314 (suspicious activity late at night reasonable basis for heightened level of suspicion); *Pearce*, 531 F.3d at 382 (furtive movement in high crime area may make gesture even more suspicious).

Furthermore, the officers were entitled to seize the firearm and Tate on probable cause for carrying a concealed weapon and, once his identity was ascertained, for state and federal charges for possession of a firearm by a convicted felon. *See United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007) ("[T]he officers could lawfully seize any object in plain view so long as the object's incriminating character was immediately apparent and the officers had a lawful right

of access to the object itself."); *United States v. Thomas*, 11 F.3d 620, 628 (6th Cir. 1993) (officer "entitled to seize the revolver when he saw its handle sticking out from under the driver's seat. Moreover, this also provided probable cause for . . . charges of carrying a concealed weapon.").

Regardless, even were the initial encounter not justified, the Fourth Amendment does not demand suppression of a firearm recovered while in plain view. That an impermissible initial stop or arrest was "the but-for cause of the officers' discovery of the gun" does not necessarily require suppression as a remedy. *United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) (although officer no longer had basis for *Terry* stop once defendant did not match description of suspect, firearm he seized was in plain view and not suppressible as "fruit of the poisonous tree") (citing *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963)).

*D. Neither Tate's statements nor the drugs seized are subject to suppression.*

Although Tate asks the court to suppress *all* evidence seized and statements over the course of his arrest,[1] his only claim depends upon the lawfulness of the officers' initial encounter with him that evening. He cites no other basis to suppress the drugs or his statements, as indeed he cannot, because both the drugs and Tate's statements are admissible.

Tate made unsolicited statements both prior and subsequent to his arrest and advice of rights under *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). As officers removed Tate and Oliver from the car, Tate "began to shout . . . that he did not want [Oliver] to get in trouble for

---

[1] Tate's motion does not specifically mention the CMHA key to Oliver's apartment recovered from his pocket. The key is admissible as it was recovered in a search incident to arrest for carrying a concealed weapon (among other offenses), *United States v. Robinson*, 414 U.S. 218, 229 (1973), and/or would have been recovered in an inventory search at booking, *Illinois v. Lafayette*, 462 U.S. 640 (1983) (arrestee's possessions may be searched in accordance with routine procedures).

his drugs in the vehicle." After acknowledging that he understood his right to remain silent, Tate told Oliver, "The Feds are gonna take this case. I ain't supposed to have it." Such volunteered statements made to or within earshot of law enforcement are not subject to the strictures of *Miranda*. *Miranda*, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence . . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *United States v. Adams*, 583 F.3d 457, 467-68 (6th Cir. 2009) (continuing to speak to law enforcement officer after having been advised of *Miranda* rights is tantamount to waiver of right to remain silent); *United States v. McConer*, 530 F.3d 484 (6th Cir. 2008) ("unwarned statements" unsolicited by interrogation not subject to *Miranda*).

Tate's first post-*Miranda* statement about needing the gun for protection was made in response to a question from Detective Ovalle prior to Tate's assertion of his right to remain silent. This also constitutes waiver, and there is no *Miranda* violation under such circumstances. *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) (response to officer's question was "a course of conduct indicating waiver of the right to remain silent") (internal quotation marks omitted); *Adams*, 583 F.3d at 467-68.

Finally, Tate's admission regarding the drugs, bolstered by his statement that they were in the car's center console, provided probable cause—and arguably consent—to search the vehicle. *United States v. Burton*, 334 F.3d 514, 519 (6th Cir. 2003) (voluntary admission of possession of narcotics constituted probable cause to search and arrest) (citing *inter alia United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search.")).

## IV. CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Tate's motion to suppress.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By: /s/ Miranda E. Dugi
Miranda E. Dugi (NY: 5140546)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3844
(216) 522-3370 (facsimile)
Miranda.Dugi@usdoj.gov

/s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-8355 (facsimile)
Kelly.L.Galvin@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Miranda E. Dugi
Miranda E. Dugi
Assistant U.S. Attorney